The relief described hereinbelow is SO ORDERED.

Signed March 14, 2011.



_____

ROBERT D. BERGER
United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

**In re:**

| | |
|---|---|
| **CELERITAS TECHNOLOGIES, LLC, and,** | **Case No.  10-22381** |
| **CELERITASWORKS, LLC,** | **Substantively Consolidated** |
| **Debtors.** | **Chapter 11** |

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO APPOINT CHAPTER 11 TRUSTEE

Judgment Creditor The Paradigm Alliance, Inc., filed the Motion to Appoint Chapter 11

Trustee.  After discovery, the matter was tried over two days.  The issue is whether cause exists

or it is in the interests of creditors, equity security holders, and the bankruptcy estate to appoint a

Chapter 11 trustee.  Based on the evidence, applicable authorities, and the following findings of

fact and conclusions of law, the Court finds it appropriate to appoint a Chapter 11 Trustee with

limited powers to oversee Debtors' financial management and litigation.

### Findings of Fact

Debtors CeleritasWorks, LLC, and Celeritas Technologies, LLC (collectively,

"Debtors"), were founded in 1994 and have approximately 50 employees.  Celeritas

Technologies provides computer or information technology related services.  CeleritasWorks

develops and licenses proprietary software and acts as server host for data storage.  Debtors are

owned by two, separate corporations, which, in turn, are owned by Perseverance Holding Corp.

Debtors' current CEO, Brett Lester, is the sole shareholder, director, and officer of Perseverance.

Lester has worked for Debtors at least 13 years.  He has directed Debtors' operations for the last

10 years.  Lester obtained Debtors' ownership interest on July 2, 2010, shortly before the

companies filed bankruptcy.  Before Lester, Debtors were owned by their prior CEO, Rob

Cossins, and his business partner, Terry Campbell.  Cossins estimated the companies to be worth

between $7.5 million to $15 million in 2010.

Debtors filed their Chapter 11 petitions on July 13, 2010, along with emergency motions

to sell their assets and establish bidding and auction procedures.  Debtors entered bankruptcy

with pre-negotiated asset purchase agreements with two entities controlled by Donald Davis.

Lester advised customers Debtors were being sold to Davis entities for "financial stability"

reasons.  Paradigm objected to the sale because it alleged Debtors were financially strong and

did not offer a credible reason for a rushed sale.  The proposed sale included selling all estate

assets in exchange for $750,000 in cash and $3,750,000 in promissory notes.  Debtors' liabilities

would attach post-sale to the relatively small amount of cash and the promissory notes.  Lester,

an insider, was to receive a 35% equity interest in the purchasing entities.  The proposed sale

was abandoned after Debtors could not or would not produce Cossins and Campbell for

discovery prior to or at the auction procedures hearing.[1]  Paradigm subsequently alleged Cossins

and Campbell received a "back-end deal" in selling Debtors to Perseverance.  Cossins and

---

[1]  Paradigm requested depositions prior to the hearing; however, the Court suggested the parties examine
the witnesses at the hearing to save time and money.  The day of the hearing, the witnesses did not appear, and the
Court postponed the hearing.

11.03.11 Celeritas Trustee Order.wpd

Campbell received less than $2,000 for Debtors in exchange for the right to receive 40% of Debtors' future net income derived from liquidation, dividends, or stock resale. The resale to Davis in bankruptcy was contemplated at the same time the Perseverance sale was negotiated with Cossins and Campbell. Lester was involved in both agreements and stood to personally gain financially.

The conflict between Debtors and Paradigm is acrimonious, long-standing, and personal. Paradigm is in the business of assisting pipeline companies to fulfill their regulatory obligations. In 2003, Debtors and Paradigm met and formed a joint venture to develop and sell software to pipeline companies. By 2005, the relationship deteriorated, and the parties parted ways. However, each party continued to develop its own marketable product. Eventually, the parties became aware of one another's competing products which gave rise to litigation. Paradigm filed suit in 2007. Paradigm prevailed at trial and proved that while the parties were joint venture partners, Debtors secretly undertook to patent for themselves the parties' jointly developed software product. Paradigm also proved Debtors intentionally used Paradigm's trade secrets without permission in the preparation and prosecution of the secret patent applications. The patent applications at issue in the underlying litigation recently resulted in an issued patent. Debtors now arguably may bring infringement suits, most likely against Paradigm.[2] Debtors were also found liable for attempting to break into Paradigm's computer systems in violation of the federal Computer Fraud and Abuse Act. Lester personally ordered an employee to attempt to break into Paradigm's system. On December 14, 2009, after more than two years of bitter and costly litigation, Paradigm obtained a judgment against Debtors in the amount of $1,107,240 and punitive damages in the amount of $1,562,420, plus post-judgment interest. On January 25,

---

[2] The parties either have or will take up those issues with the United States Trademark and Patent Office.

- 3 -

11.03.11 Celeritas Trustee Order.wpd

2011, after obtaining stay relief, Paradigm obtained a ruling granting it attorney's fees.[3]  Debtors

have appealed the judgment but did not file an appeal bond to stay execution.

Debtors allege Paradigm's judgment necessitated their bankruptcy filings.  However,

Debtors have been profitable and increased their profitability while in bankruptcy.  On June 30,

2010, Debtors reported $160,124 in net income.  Debtors continued to rely on that number until

trial when it was shown Debtors had actual net income of $805,588 as of December 2010.

Despite Debtors' professed fears a prolonged bankruptcy would cost them key employees,

Debtors have lost only one management level employee who testified he left for a better position

and not because of Debtors' bankruptcy.  Debtors' customer base has remained steady.

Debtors' ongoing conflict with Paradigm is the crux of this bankruptcy and the reason

Paradigm filed a motion to appoint a trustee.  The history of the case, while short, is filled with

their ongoing strife.  Davis's early involvement in the proposed §363 sale was criticized by

Paradigm because he did not offer much capital or industry expertise.  Lester, in an email to

Cossins, wrote, "Don Davis, slick and east coast though he may be, gives us . . . [t]he best

chance to beat Paradigm."   Campbell wanted to contractually obligate Davis to sue Paradigm for

patent infringement in order to force Paradigm into a reduced settlement.  In September 2010,

the parties attempted mediation.  Davis participated, and to Paradigm, he appeared the primary

speaker for Debtors.  The mediation did not reach a resolution.  Later, Davis told Paradigm he

intended to purchase Perseverance, instead.  The proposed sale did not occur, in part, because of

Paradigm's protests.  Debtors next proposed a reorganization plan which provided Davis-

---

[3]  The amount has not yet been determined, but it will be a significant award.  Debtors scheduled their own counsel, Lathrop & Gage, L.C., as owed $1,200,000 as a result of the Paradigm litigation.

11.03.11 Celeritas Trustee Order.wpd

controlled entities would acquire 60% interest in Debtors for $500,000. Debtors have abandoned

that plan, and Davis has apparently withdrawn his presence from the bankruptcy case.

Lester remains in control of Debtors and will remain so under the amended

reorganization plan. Lester has testified regarding his personal hatred for Paradigm. Under oath,

Lester stated, "Is there a part of me that says I would love to break this off in Paradigm? You

bet."

Debtors' reticence for full disclosure, their failure to cooperate in providing discovery,

and their stated animosity toward Paradigm are some of many concerns Paradigm has regarding

Debtors' fiduciary duties in bankruptcy.

**Conclusions of Law**

Section 1104(a) of the Code provides two alternative grounds for appointing a trustee:

(a)      At any time after the commencement of the case but before
confirmation of a plan, on request of a party in interest or the
United States trustee, and after notice and a hearing, the court shall
order the appointment of a trustee-

(1)      for cause, including fraud, dishonesty, incompetence, or gross
mismanagement of the affairs of the debtor by current
management, either before or after the commencement of the case,
or similar cause . . .; or

(2)      if such appointment is in the interests of creditors, any equity
security holders, and other interests of the estate . . . .

The decision whether the facts establish cause under §1104(a)(1) is vested in the court's

discretion and will be reviewed under an abuse of discretion standard.[4] The court is vested with

even broader discretionary powers under §1104(a)(2) and may consider equitable factors to

---

[4] *In re Nartron Corp.,* 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005); *In re Sundale, Ltd.,* 400 B.R. 890,
900 (Bankr. S.D. Fla. 2009); *In the Matter of Intercat, Inc.,* 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000).

11.03.11 Celeritas Trustee Order.wpd

determine whether a trustee is in the interests of the estate and its creditors.[5]  If the facts of the

case support the appointment of a trustee under either subsection §§1104(a)(1) or (2), the court

has no discretion, but must appoint a trustee.[6]   The appointment of a Chapter 11 trustee is an

extraordinary remedy based on a strong presumption in favor of leaving the debtor in possession.

"Nevertheless in the appropriate case, the appointment of a trustee is a power which is critical

for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure

that the interests of creditors are served."[7]  The appointment of a Chapter 11 trustee should better

serve creditors, shareholders, and the public interest by promoting efficiency, effectiveness and

transparency, traits which may have been lost by current management.

Paradigm raises an issue with the appropriate burden of proof it must carry to prevail.

The majority of courts cite a clear and convincing burden.[8]  However, while these citations are in

the majority, they have little support in the language of the Code or in legislative history.  The

Tenth Circuit has not adopted the standard.[9]  At least one reviewing court, with more analysis,

has rejected the clear and convincing burden in favor of the preponderance of the evidence

burden.[10]  *Tradex* found a reflexive endorsement of a more demanding clear and convincing

burden to appoint a trustee anomalous to Supreme Court precedent, specifically relying on

*Grogan v. Garner*.[11]  *Grogan* found a creditor seeking to except its debt from discharge for false

---

[5]  *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).

[6]  *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.)*, 838 F.2d 1133, 1136 (10th Cir. 1988).

[7]  *In the Matter of Intercat, Inc.,* 247 B.R. at 920.

[8]  *See, e.g., In re G-I Holdings, Inc.,* 385 F.3d 313, 318-19 (3d Cir. 2004).

[9]  *In re Plaza de Retiro, Inc.,* 417 B.R. 632, 640 n.8 (Bankr. D.N.M. 2009).

[10]   *Tradex Corp. v. Morse,* 339 B.R. 823 (D. Mass. 2006) (Noting the abuse of discretion standard requires the reviewing court to conclude no reasonable person could have interpreted the evidence as the trial court.  The standard of review on appeal belies a heightened evidentiary burden at trial.)

[11]   *Grogan v. Garner,* 498 U.S. 279 (1991); *see also Herman & MacLean v. Huddleston,* 459 U.S. 375, 388 (1983) (securities fraud claims are subject to preponderance of the evidence standard and not clear and convincing standard).

- 6 -

11.03.11 Celeritas Trustee Order.wpd

pretenses and fraud need do so by the preponderance of the evidence. *Grogan* noted most states

have adopted the higher standard for fraud claims by common law. However, the Supreme

Court found no similar adoption by Congress and refused to apply the higher standard without a

statutory directive. The Court concluded the absence of statutory language or legislative history

requiring a heightened standard of proof presumes the usual preponderance of the evidence

standard applies in civil cases between private litigants unless an important individual interest or

right is at stake.[12] Cases involving an important individual right to which the clear and

convincing burden has been applied include involuntary commitment, termination of parental

rights, deportation or denaturalization.[13] *Tradex* found no individual right at stake in a motion to

appoint a trustee.[14]

Paradigm raises a legitimate point; however, this particular case does not recommend

itself to a departure from the majority view in favor of a lesser standard of proof. In practice, the

appoint of a Chapter 11 trustee is not a close call. Since *Tradex,* cases noting the split in

authority find even if they adopted the lower burden, the movants had met the higher burden.[15]

The same is true in this case.

### A.    Cause Exists to Appoint a Chapter 11 Trustee.

Paradigm has proven with clear and convincing evidence Debtors can not objectively

address their debt to Paradigm in bankruptcy without the assistance of a disinterested trustee.

Acrimony between debtor and creditor which impedes the reorganization effort is cause to

---

[12] *Grogan v. Garner,* 498 U.S. at 286.

[13] *Herman & MacLean v. Huddleston,* 459 U.S. at 389-90.

[14] *In re Tradex,* 339 B.R. at 830.

[15] *See, e.g., In the Matter of Intercat,* 247 B.R. at 923 n.4; *In re Plaza de Retiro, Inc.,* 417 B.R. at 640 n.8; *In re Veblen West Dairy LLP,* 434 B.R. 550, 553 (Bankr. D.S.D. 2010).

- 7 -

appoint a Chapter 11 trustee.[16]  In this regard, *Nartron* is particularly instructive and on point.

Nartron was a successful automobile accessory business.  It filed bankruptcy, not because it was

insolvent, but as a litigation tactic.  The principal of Nartron was so blinded by years of

underlying lawsuits, he could not fulfill his fiduciary duties in bankruptcy.  Specifically, he

could not objectively handle the ongoing litigation and comply with his duties of disclosure and

transparency while his company continued to enjoy the protection of the automatic stay.  The

court found any costs associated with appointing a trustee would be offset by the litigation costs

Nartron continued to accrue post-petition.  As in this case, Nartron management was found to be

either unwilling or incapable of making the transition from zealous litigant to fiduciary in

bankruptcy.  However, because Nartron management was notably talented and profitably

running the business, the appointed trustee's powers were limited to overseeing financial

disclosure requirements and objectively managing the debtor's litigation.

Paradigm has proven Debtors are improperly attempting to use bankruptcy to keep their

assets and evade their debt to Paradigm.  Davis's involvement in the "emergency" §363 sale, the

proposed purchase of Debtors' holding company, and the first reorganization plan have been

proven ruses.  Debtors withdrew all three proposals before the Court could scrutinize them.

Paradigm's concerns were well-founded.   Davis did not offer needed capital or business

expertise.  Debtors did not face dire consequences if an expedited bankruptcy sale failed to close.

Davis offered nothing, which is proven by the fact he is gone.  After three aborted attempts,

Debtors have damaged the confidence of the Court and their creditors in Debtors' ability to

abruptly change tactics and deal with the Paradigm debt with good business judgment as

---

[16] *In re Nartron Corp.,* 330 B.R. at 590 (*citing In re Marvel Entertainment Group, Inc.,* 140 F.3d 463 (3d Cir. 1998)); *In re Plaza de Retiro,* 417 B.R. at 640-41.

11.03.11 Celeritas Trustee Order.wpd

opposed to personal animosity. As in *Nartron*, if Debtors did not want anyone involved in their decisions, they should have filed an appeal bond and not sought refuge in bankruptcy. After seeking the benefit of the automatic stay, Debtors became subject to judicial scrutiny, a fact Debtors seem resistant to accept.

**B. The Best Interests of Creditors Require the Appointment of a Trustee.**

Bankruptcy courts consider a variety of factors to evaluate whether a trustee is needed under §1104(a)(2) to manage the debtor's affairs.[17] As with the analysis of cause under §1104(a)(1), the debtor's ability to fulfill its duty of care to protect the assets, its duty of loyalty, and its duty of impartiality is at the base.[18] Perceived dishonesty or the withholding of information supports the appointment of a trustee.[19] "One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization."[20] Other factors may include (i) the overall management of debtor, both past and present, (ii) the trustworthiness of debtor's management, (iii) the confidence or lack thereof of the business community and of creditors in present management, and (iv) practical considerations, such as the benefits derived by the appoint of a trustee, balanced against costs.[21]

---

[17] *In re Nartron Corp.,* 330 B.R. at 592; *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990).

[18] *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985); *Smart World Techs., LLC, v. Juno Online Servs., Inc. (In re Smart World Techs., LLC),* 423 F.3d 166, 175 (2d Cir. 2005); *In re Bowman,* 181 B.R. 836, 843 (Bankr. D. Md.1995).

[19] *See, e.g., In re Plaza de Retiro, Inc.,* 417 B.R. at 641; *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. at 526.

[20] *Id.*

[21] *In re Ionosphere Clubs, Inc.,* 113 B.R. at 168.

11.03.11 Celeritas Trustee Order.wpd

What Debtors describe as "run-of-the-mill" discovery disputes, Paradigm has proven are dereliction of fiduciary duties. For example, producing illegible ledgers, failing to disclose material information regarding improved finances, and failing to provide candid and accurate information about Debtors' profitability are breaches of duty. Debtors failed to provide accurate information about their ownership, the recent pre-petition change in ownership, and the terms of the transactions. The history of this case proves the information will be disclosed. Why Debtors believe disclosure must first be fought as a discovery dispute demonstrates Debtors' endemic lack of judgment when it comes to dealing with Paradigm. To this point, Paradigm has acted as the overseer of Debtors' fiduciary responsibilities at considerable expense. The status quo is not working for either party or other creditors. The appointment of a disinterested trustee is in the best interest of the estate and its creditors.

C.      **Appointing a Trustee with Limited Powers**.

Section 1107 gives the debtor-in-possession certain rights and powers "subject to ... such limitations or conditions as the court prescribes ...." Similarly, §1108 provides "[u]nless the court ... orders otherwise, the trustee may operate the debtor's business." Both sections grant broad authority to assign duties to a debtor-in-possession or a trustee if one is appointed. As in *Nartron*, the circumstances of this case call for an independent trustee with limited powers. The appointed Trustee shall oversee financial management and disclosure requirements of Debtors; monitor expenditures of estate assets; investigate and prosecute estate causes of action; mediate and address Paradigm's and Lathrop and Gage's claims in a reasonable and efficient manner; and oversee the approval of the Disclosure Statement and confirmation of a Plan of Reorganization.

11.03.11 Celeritas Trustee Order.wpd

Debtors' current management has proven it has operational expertise and success in keeping the companies profitable. Current management may remain in control of business operations, including product development and sales.

The United States Trustee shall appoint a Chapter 11 Trustee with specific but limited powers as outlined. Lester and his management team may continue to serve in their operational roles and shall report on a regular and timely basis to the Trustee in the manner directed by the Trustee. Any dispute over clarification of this Order shall be resolved by stipulation between the Chapter 11 Trustee and the Lester management team when possible or by further order of the Court upon request.

IT IS SO ORDERED.

### 

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

11.03.11 Celeritas Trustee Order.wpd